UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| EARL INGELS,<br>    Petitioner, | : Case No.  C-1-00-1003<br>:<br>: JUDGE SPIEGEL |
| v. | :<br>: Magistrate Judge Hogan |
| WANZA JACKSON[1], WARDEN,<br>    Respondent. | :<br>: |

## RESPONDENT JACKSON'S SUPPLEMENTAL RETURN OF WRIT

**I.    INTRODUCTION**

Petitioner Earl Ingels, #362-813 (hereinafter Ingels) filed a petition for writ of habeas corpus containing two (2) grounds for relief on December 4, 2000.  In response, Respondent filed a return of writ asserting that Ingels' prosecutorial misconduct claim was unexhausted, that his ineffective assistance of trial counsel claim was waived, and that both grounds for relief were without merit.

Since the filing of said return, these habeas proceedings were stayed, and Ingels filed a delayed appeal motion in the Ohio Supreme Court and a *Murnahan* application in **only** the Ohio Court of Appeals.  Ingels then filed a "Second Amended Petition" in which he set forth three (3) of new claims that he deemed unworthy of mention in his original petition.  On March 11, 2004, this Court reactivated the proceedings and ordered Respondent to file a return within forty

---

[1] Ingels named Harry Russell as Respondent in his petition.  However, Ingels is currently incarcerated at Warren Correctional Institution, where Wanza Jackson is the Warden who is therefore the proper party respondent.

(40) days. For the convenience of the Court, this Supplemental Return of Writ will contain both a full discussion of the procedural history of this case and the consequences of Ingels' subsequent state court litigation.

## II.    PROCEDURAL HISTORY

### 1.    *State Action -- Trial*

Ingels was indicted in case number B9800321 by the Hamilton County Grand Jury on February 20, 1998, on six (6) counts for the crime of Kidnapping in violation of Ohio Revised Code §2905.01(A)(4), with four (4) of the counts containing specifications; one (1) count for the crime of Gross Sexual Imposition in violation of Ohio Revised Code §2907.05(A)(2); and one (1) count for the crime of Sexual Battery in violation of Ohio Revised Code §2907.03. (Return of Writ, Exhibit A). In case number B9802147 Ingels was indicted by the Hamilton County Grand Jury on April 8, 1998 on two (2) counts for the crime of Kidnapping in violation of Ohio Revised Code §2905.01(A)(4), one of which contained a specification; two (2) counts for the crime of Attempted Kidnapping in violation of Ohio Revised Code §§2905.01 and 2923.02(A); and one (1) count for the crime of Gross Sexual Imposition in violation of Ohio Revised Code §2907.05(A)(2). (Return of Writ, Exhibit B).

Upon arraignment Ingels entered a plea of not guilty and the cases were thereafter consolidated for the purpose of a jury trial. Ingels was found guilty on four counts of kidnapping - two with the specification of sexual motivation, two counts of gross sexual imposition, one count of abduction and one count of attempted abduction.

Ingels was sentenced in case number B9800321 to consecutive terms of incarceration of nine years to life on the two kidnapping convictions, and four (4) years on the abduction conviction. Ingels was also sentenced to a concurrent one and one-half (1½) year term of incarceration on the gross sexual imposition conviction. (Return of Writ, Exhibit C, Case No. B9800321).

In case number B9802147, Ingels was sentenced to consecutive terms of incarceration of nine (9) years on the kidnapping counts and one (1) year on the attempted abduction conviction. Ingels was also sentenced to a one (1) year term of incarceration on the gross sexual imposition count. (Return of Writ, Exhibit D, Case No. B9802147).

### 2. *Direct Appeal*

Ingels filed timely notices of appeal in case numbers B9800321 (Return of Writ, Exhibit E), and B9802147 (Return of Writ, Exhibit F). In his subsequent brief, Ingels alleged the following assignment of error:

> The trial court erred to the prejudice of Defendant-Appellant by overruling his objections to improper arguments, amounting to prosecutorial misconduct, during closing argument.

(Return of Writ, Exhibits G & H). On July 13, 1999, the State of Ohio filed its brief. (Return of Writ, Exhibit I). The Court of Appeals affirmed the judgment of the trial court and dismissed Ingels' appeal on December 3, 1999. (Return of Writ, Exhibit J, Case Nos. C980673/C980674).

Ingels chose **not** to perfect a timely appeal from the denial of his direct appeal to the Ohio Supreme Court.

### 3. *Federal Habeas Corpus*

On December 4, 2000, Ingels filed an application for writ of habeas corpus pursuant to 28 U.S.C. Section 2254, in which he raised the following grounds for relief:

1. Prosecutorial Misconduct.

2. Ineffective Assistance of Counsel.

On March 31, 2003, this Court issued an Order staying this action in order that Ingels could exhaust his state court remedies.

### 4. *Delayed direct appeal*

Subsequent to being ordered by this Court to return to the state court to exhaust his direct appeal prosecutorial misconduct claim, Ingels filed a motion for leave to file a delayed appeal in the Ohio Supreme Court on July 1, 2003. (Exhibit A). On September 10, 2003, the Ohio Supreme Court denied Ingels' motion for leave to file a delayed appeal.[2] (Exhibit B, Case No. 03-1160).

### 5. *Application for Reopening (Murnahan application).*

On June 27, 2003, Ingels filed an application for reopening of his direct appeal (hereinafter *Murnahan* application) in the First District Court of Appeals that claimed that appellate counsel was ineffective for failing to raise a multitude of assignments of error. (Exhibit C). The State filed a memorandum in opposition. (Exhibit D). On September 8, 2003, the Court of Appeals overruled

---

[2] Since Ingels' amended petition makes no mention of his prosecutorial misconduct claim, it would appear that Ingels no longer wishes to litigate this claim in federal habeas corpus. Were this not the case, it would be Respondent's position that this ground for relief is waived as a consequence of Ingels' failure to present the claim in a fair and timely fashion to the Ohio Supreme Court and that the claim lacks merit for reasons discussed in Respondent's return of writ.

Ingels' *Murnahan* application, finding that Ingels did not show good cause for the untimely filing of his application. (Exhibit E, Case Nos. C-980673/C-980674).

Incredibly, Ingels chose **not** to appeal the Court of Appeals' denial of his *Murnahan* application to the Ohio Supreme Court.

### 6. *Amended Federal Habeas Corpus Petition*

Ingels is now before this Court upon the filing of an amended petition for writ of habeas corpus in which he raises the following four (4) grounds for relief, only one of which was mentioned in his original petition:

1. Denial of effective assistance of appeals counsel.

2. Denial of effective assistance of trial counsel.

3. Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

4. Failure of the trial court to have all sidebar conferences placed on the record.

Ingels' petition must be dismissed for reasons to follow.

### III. <u>STATEMENT OF FACTS</u>

Ingels was accused of drugging and committing sexual acts on at least eight female victims. On November 10, 1997, Deanna McCullough began a secretarial job at Ingels' home. (Tr. 243). That morning Ingels brought Deanna a cup of coffee and made a sexual comment to her as she watched an instructional video regarding his company. (Tr. 248). As Deanna worked, Ingels brought her another cup of coffee and Deanna became very dizzy. (Tr. 253). She stumbled up the steps and laid down on the upstairs couch. When she awoke, her bra was pushed above her breast. Ingels was beside her kissing, touching and fondling

5

her breast, and Ingels' erect penis was on her leg. (Tr. 254-255). Still woozy, she struggled to the bathroom knowing that she had been drugged. (Tr. 257). A urine sample found a drug called Horazopan or Ativan in Deanna's system. (Tr. 375).

Krista Farmer was another Ingels secretary. She worked for Ingels about a week before Deanna McCullough. When Krista went to work with a cold, Ingels gave her a tomato juice, garlic, salt and pepper drink which made her extremely dizzy. (Tr. 377). Miss Farmer escaped Ingels by driving home. (Tr. 378).

Cindy Richardson was an exotic dancer paid to go to Ingels' house and dance naked while Ingels masturbated. (Tr. 408, 477). Six to eight months later, Cindy was employed by Ingels as a secretary. (Tr. 414). Cindy was asked to stay late one day so a computer expert could show her how to work the computer. At nine o'clock in the evening, Ingels offered Cindy a beer. (Tr. 420). For about forty-five minutes, Cindy remembered nothing. The next thing she remembered was waking up the next morning at her home. (Tr. 422). One month later, Cindy's boyfriend was mailed pictures of Cindy posing, eyes wide open, smiling in the nude.

Melissa Luken cleaned house for Ingels in February, 1997. (Tr. 486). The last time she cleaned, Ingels offered her a beer. (Tr. 491). Melissa left Ingels house and got into an automobile accident. (Tr. 489-499). A urine test found the drug benzodiazepine in Melissa's system.

In February, 1997, Jennifer Priller planned to meet her sister at a bar for her birthday. (Tr. 569). First, she went to Ingels' house where he gave her a drink. (Tr. 371). Jennifer's next memory was of waking up the following morning naked in Ingels' bed. (Tr. 571).

Kelly Parks, an exotic dancer, danced naked at Ingels' house on November 19, 1996. (Tr. 605-607). While there, Kelly "downed a drink" for $20.00 at Ingels' request. (Tr. 612). At this point Kelly was completely naked except for a cowboy hat. When Kelly awoke, it was 5:00 a.m., she was at Ingels' home, and fully clothed. (Tr. 613).

Unemployed and without money, Lisa Conley was offered a place to stay by Ingels. (Tr. 644). Ingels promised a "no sex" relationship, which to Ingels meant that he would masturbate while Lisa sat on a chair watching television. (Tr. 646-648). After about five months Ingels drugged Lisa. (Tr. 651). The following morning she awoke naked in Ingels' bedroom. (Tr. 651). The next day Ingels talked to her about their sexual intercourse. (Tr. 651). About a week later, Ingels drugged her again. (Tr. 657). Lisa left, got into an automobile accident and never returned. (Tr. 685, 690).

Tracy Sickles did clerical work for Ingels and her step-father (Tr. 710), who were business partners. (Tr. 712). One day Ingels asked Miss Sickles to come to his house to help him do paperwork and offered her a Coke. (Tr. 714-716). After drinking the Coke, Tracy got very sleepy. (Tr. 717). When Tracy awoke Ingels was sucking on her breasts. (Tr. 718).

Stephanie Ingels, Ingels daughter-in-law, testified that while cleaning Ingels' house, she found twelve (12) Ativan pills hidden behind a picture. (Tr. 759, 762). Dr. Powers, Chief Toxicologist at the Coroner's Lab testified that the victims' testimony was consistent with the effects of an overdose of Ativan. (Tr. 934, 947, 955, 969).

## IV.   AEDPA - STANDARD OF REVIEW

### 1.   *Introduction*

On April 24, 1996 President Clinton signed Section 101 of the Antiterrorism and Effective Death Penalty Act of 1996, codified as amended at 28 U.S.C. §2244 (d) (hereinafter AEDPA) into law. AEDPA made significant changes in habeas law including a one-year statute of limitations, restrictions on issues that can be appealed, vastly heightened respect for state court factual and legal determinations, and restrictions on the ability to file successive petitions and timetables for federal courts to act on capital habeas actions when certain prerequisites have been met.

### 2.   *Claims Adjudicated on the Merits in State Court*

Under 28 U.S.C. Section 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Terry Williams v. Taylor*, 529 U.S. 362 (2000) the United States Supreme Court provided guidance on the meaning of the habeas standard of review. Specifically the Court held that a writ may not issue unless:

> the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*See also, Price v. Vincent*, 123 S.Ct. 1848 (2003).

The Sixth Circuit Court of Appeals has similarly recognized that under AEDPA standards a federal habeas petitioner is required to show that the state courts:

> either failed to apply clearly established federal law to [petitioner's] claims, issued a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings", or denied [petitioner's] claims even though the facts of [petitioner's] case were "materially indistinguishable" from a case in which the Supreme Court granted relief.

*Roberts v. Carter,* 337 F.3d 609 (6th Cir. 2003), *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied,* 532 U.S. 989 (2001).

### 3. *Presumption of Correctness*

28 U.S.C. Section 2254 (e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall

9

be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Pursuant to the required deference, a writ of habeas corpus should not be granted unless "the state court decision [is] so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers v. Killinger*, 169 F.3d 352, 361-62 (6th Cir.), *cert. denied*, 527 U.S. 1004, (1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998)).

Federal courts must therefore defer to state court factual findings, affording a presumption of correctness that a habeas petitioner may rebut only with clear and convincing evidence.  *See,* 28 U.S.C. Section 2254(e)(1).  "The presumption * * * applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996).

    *4.*    ***Evidentiary Hearing***

Under 28 U.S.C. Section 2254:

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows –

    (A) the claim relies on –

        (I)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

        (II)    a factual predicate that could not have been previously discovered

> through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the United States Supreme Court addressed Section 2254(e)(2). The Court held that AEDPA prohibited a federal district court from holding an evidentiary hearing to consider factual issues to situations unless it could be established that the claim relied upon either a new retroactive rule of constitutional law or a factual basis that could not have been discovered by due diligence, **and** that the facts underlying the claim could establish by clear and convincing evidence that but for the error, no reasonable factfinder would have found the petitioner guilty. *Williams* at 433.

## V.     STATUTE OF LIMITATIONS

### 1.     *Introduction*

The AEDPA one-year statute of limitations set forth in 28 U.S.C. §2244 states, in relevant part, as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

In *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001), the Sixth Circuit explicitly recognized that once it has expired, subsequent prisoner litigation **cannot** retrigger the AEDPA statute of limitations. In so ruling the Court held at 519:

> In declining to find that the statute of limitations under AEDPA was 'retriggered" by the denial of Searcy's motion for a delayed appeal, the district court relied on the rationale of a sister court from the Second Circuit:
>
>> This is a position that we cannot endorse, because it would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.
>
> *Raynor v. Dufrain*, 28 F.Supp.2d 896, 898 (S.D.N.Y.1998). We agree with this rationale and hold, as did the district court, that although the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion.

See also, *Bronaugh v.* Ohio, 235 F.3d 280, 285 (6th Cir. 2000).

### 2. *Ingels' first, third and fourth grounds for relief are time-barred.*

Ingels' first, third and fourth grounds for relief are time-barred. This is so because a motion to amend does not relate back to the original filing date where it interjects a new and unanticipated claim or legal theory. *United States v. Hicks,* 283 F.3d 380 (D. C. 2002); *Pruitt v. United States,* 274 F.3d 1315 (11th Cir.

2001). Here, none of Ingels' new claims were even mentioned in Ingels' direct appeal or initial habeas corpus petition.

As discussed above, Ingels chose not to timely appeal the Court of Appeals' December 3, 1999 denial of his direct appeal. Ingels' right to pursue a timely appeal to the Ohio Supreme Court's expired thirty (30) days thereafter on January 2, 2000. Since Ingels' first, third and fourth grounds for relief were **not** contained in Ingles' original habeas petition, the AEDPA statute of limitations with respect to said claims expired on January 2, 2001, or over two years **before** Ingels ever even attempted to present said claims to the Ohio appellate courts. Under the dictates of *Searcy,* Ingels' subsequent state court litigations cannot restart an expired AEDPA statute of limitations. Ingels' first, third and fourth grounds for relief are thus time-barred.

### VI. PROCEDURAL DEFAULT

#### 1. *Claims not fairly presented to the State Courts*

A petitioner is generally procedurally barred from presenting claims not fairly presented to the state courts, unless he can demonstrate cause to excuse his failure to present the claims in the state courts and actual prejudice resulting from the failure. *See*, *Coleman v. Thompson*, 501 U.S. 722, 723 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 89-90 (1977). The failure to fairly present issues on direct appeal to the Ohio Supreme Court bars habeas consideration of the claim absent a showing of cause and prejudice. *Leroy v. Marshall*, 757 F.2d 94, 97-99 (6th Cir. 1983) *cert. denied*, 474 U.S. 831 (1985).

In the Sixth Circuit, procedural default is generally analyzed under the

four-part test articulated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The test asks: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review; and (4) whether the petitioner can demonstrate cause for, and actual prejudice resulting from, the procedural default.

Even where a prisoner exhausts available state court remedies, if a federal habeas petitioner fails to fairly present a constitutional claim to the state courts, he procedurally defaults his claim on federal habeas corpus. A petitioner who has defaulted such claims may not bring his claims in federal habeas corpus unless he can demonstrate cause for the default and actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Frady*, 456 U.S. 152, 168 (1982). Demonstrating "cause" requires showing that an objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule. *Murray, supra*, at 488. Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error. *Frady, supra,* at 168.

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *See Coleman v. Thompson*, supra at 750; *Murray, supra* at 496.

> ### 2. Ingels has waived the right to bring all of his grounds for relief in federal habeas corpus.

Although Ingels' has waived the right to bring **all** of his instant grounds for relief in federal habeas corpus, the basis for the waiver is slightly different with respect Ingels' first ground for relief and Ingels' remaining grounds for relief.

As his first ground for relief, Ingels asserts an ineffective assistance of appellate counsel claim that he raised in the Court of Appeals by means of an **untimely** *Murnahan* application. In its denial of Ingels' *Murnahan* application, the Court of Appeals explicitly relied upon Ingels' procedural default when it dismissed the application for the reason that, "[Ingels] failed to file his application within the ninety days prescribed by App.R. 26(B)(2)(b)." (Exhibit E). Thereafter, Ingels compounded his procedural default by failing to pursue an Ohio Supreme Court appeal. Thus, as a consequence of Ingels' failure to appeal, Ingels deprived the Ohio Supreme Court of **any** opportunity to consider his *Murnahan* application. Under these circumstances, with respect to Ingels' ineffective assistance of appellate counsel claim, the first and second factors in the *Maupin* test have been satisfied.

As his second through fourth grounds for relief Ingels asserts claims that he failed to present to a single Ohio court. As a consequence of Ingels' failure to include each claim in either his direct appeal or by filing a post-conviction petition, Ingels absolutely deprived the Ohio courts of any opportunity to consider his claim. Moreover, Ingels cannot seriously contend that his untimely *Murnahan* application that alleged ineffective assistance of appellate counsel constituted a fair presentation of his underlying grounds for relief. Indeed, in *Lott v. Coyle*, 261

F.3d 594, 612 (6th Cir. 2001), the Sixth Circuit recognized that challenging appellate counsel's effectiveness for failure to litigate a direct appeal claim is **not** the same as raising the underlying claim itself.  Under these circumstances the first and second factors in the *Maupin* test have been satisfied.

The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims.  The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002).

Fourth, since the Ohio appellate courts were deprived of even an opportunity to consider Ingels' grounds for relief, Ingels is required to demonstrate that there was cause for and that he was actually prejudiced by his procedural default.  Here, Ingels' failure to file a timely *Murnahan* application and subsequent failure to pursue any Ohio Supreme Court *Murnahan* appeal precludes a finding of either cause or prejudice for Ingels' procedural defaults. As such, the *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . ." *Murray*, 477 U.S. at 496.  None of Ingels' claims raise issues with respect to actual innocence.  Furthermore, as observed by the Court of Appeals at Return of Writ, Exhibit J, p. 4, "Here, there was overwhelming evidence of Ingels' guilt, including the testimony of his victims, urinalysis tests revealing the presence of lorazepam

or benzodiazepine in several victims' urine, and lorazepam tablets discovered behind a picture frame at Ingels' house". Ingels has waived the right to pursue all of his grounds for relief in federal habeas corpus.

VII.   **CONCLUSION**

Based upon the aforementioned reasons, Ingels first, third and fourth grounds for relief are time-barred and all of Ingeles' grounds for relief are procedurally defaulted. This action must be dismissed and no certificate of appealability should issue*.*

        Respectfully submitted,

        JIM PETRO   (0022096)
        Attorney General

        s/Stuart A. Cole
        STUART A. COLE (0020237)
        Assistant Attorney General
        Corrections Litigation Section
        150 East Gay Street, 16th Floor
        Columbus, Ohio 43215
        (614) 644-7233
        (614) 728-9327 (Fax)
        scole@ag.state.oh.us

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Respondent's Supplemental Return of Writ was forwarded to Timothy Alan Wilson, 14 Driftwood Street #5, Marina DelRey, California 90292, by regular U.S. mail, postage pre-paid, this 17th day of March, 2004.

                              s/Stuart A. Cole
                              STUART A. COLE (0020237)
                              Assistant Attorney General

## INDEX

| Item | Exhibit |
|---|---|
| Motion for Delayed Appeal<br>Ohio Supreme Court<br>Case No. 03-1160 | A |
| Entry<br>Ohio Supreme Court<br>Case No. 03-1160 | B |
| *Murnahan* Application<br>Court of Appeals, First Appellate District<br>Case Nos. C-980673/C-980674 | C |
| Memorandum in Opposition<br>Court of Appeals, First Appellate District<br>Case Nos. C-980673/C-980674 | D |
| Entry Denying *Murnahan* Application<br>Court of Appeals, First Appellate District<br>Case Nos. C-980673/C-980674 | E |
| Docket Sheets | F |