RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0197a.06

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ALFRED L. DICENZI,[*]

    Petitioner-Appellant,

v.                                                                No. 04-3571

NORMAN ROSE, Warden,

    Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-00602—Ann Aldrich, District Judge.

Submitted: July 27, 2005

Decided and Filed: June 16, 2006

Before: MOORE and COLE, Circuit Judges; WISEMAN, District Judge.[**]

---

## COUNSEL

**ON BRIEF:** Carlos Warner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, John T. Martin, CUYAHOGA COUNTY PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Stuart A. Cole, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

---

## AMENDED OPINION

R. GUY COLE, JR., Circuit Judge. Petitioner-Appellant Alfred DiCenzi appeals the district court's dismissal of his habeas petition on the ground that the petition was not timely filed. Following a guilty plea to vehicular homicide, DiCenzi was given the maximum sentence under Ohio law, but claims he was never informed by either the trial court or his attorney that Ohio affords those sentenced to a maximum sentence a non-waivable right to a direct appeal of their sentences. When DiCenzi finally became aware of this right, he filed a motion for delayed direct appeal, but this motion was denied by the Court of Appeals of Ohio and the Supreme Court of Ohio. He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court, alleging that his constitutional rights had been violated both by the trial court when it did not inform him of his right to appeal, and by the state appellate court when it refused to consider his delayed

---

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

---

1

---

No. 04-3571                    DiCenzi v. Rose                    Page 2

appeal. The district court determined that the petition was untimely, and dismissed it without reaching the merits. Because we find that the portion of DiCenzi's petition relating to the Ohio appellate courts' decisions was timely, and because we find that the district court failed to determine conclusively whether DiCenzi was diligent during the time when he claims to have been unaware of his appeal rights, we **VACATE** the district court's dismissal of the petition and **REMAND** for further proceedings consistent with this opinion.

### I.

On May 27, 1999, in the Cuyahoga County Court of Common Pleas, DiCenzi pleaded guilty to aggravated vehicular homicide and aggravated vehicular assault. He was sentenced to five years imprisonment on the vehicular homicide count and eighteen months on the vehicular assault count, to be served consecutively. This constituted the maximum possible sentence for these convictions, and thus under Ohio law the sentencing judge was required to make certain specific factual findings and inform DiCenzi of his right to appeal his sentence despite his guilty plea. Ohio Rev. Code §§ 2953.08(A)(1)(b); 2953.08(A)(4). At sentencing, however, the trial judge did not inform DiCenzi of his right to appeal his sentence.

Eight months later, in February 2000, DiCenzi's counsel filed a motion for judicial release in which he argued that good behavior rendered DiCenzi eligible for probation. This motion was denied on April 14, 2000. On March 13, 2001, DiCenzi filed a *pro se* motion to merge his two convictions for sentencing purposes, to avoid duplicate punishment for the same acts. No court appears to have acted on this motion. Then, in August 2001, DiCenzi contacted the Cuyahoga County Public Defenders' office ("Public Defender"), who informed him of his right to appeal his sentence. As a result, DiCenzi immediately filed a motion for leave to file a delayed appeal of his sentence on August 23, 2001. This motion was denied by the Ohio Court of Appeals on September 25, 2001.

At this point, the Public Defender independently decided to investigate the case. After examining the sentencing transcript and determining that DiCenzi had never been notified of his right to appeal, the Public Defender agreed to represent DiCenzi and, pursuant to Ohio Appellate Rule 26, filed a motion for reconsideration in the Court of Appeals for Cuyahoga County on October 5, 2001. The motion was denied without opinion on October 24, 2001. The Public Defender then filed a motion to file a delayed appeal in the Supreme Court of Ohio on November 16, 2001, arguing that DiCenzi had been denied his right to due process when he had been unaware of his right to appeal prior to August 2001. Though this motion was granted, the Supreme Court of Ohio later dismissed the appeal.

DiCenzi, still represented by the Public Defender, then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court, alleging: (1) a Sixth Amendment violation arising from his attorney's failure to notify him of his appeal rights; and also three due process violations arising from (2) the trial court's failure to afford him the required protections of Ohio law in imposing a maximum sentence, (3) the trial court's "failure to advise him of his appellate rights," and (4) the state appellate court's "refus[al] to allow him to file a delayed appeal." A magistrate judge recommended dismissal of the petition, finding both that the petition was not timely filed and that equitable tolling was not warranted. Over DiCenzi's objections and after a de novo review of the record, the district court dismissed the petition as untimely, for effectively the same reasons as those found in the magistrate judge's recommendation, but granted a certificate of appealability as to the timeliness issue. The Public Defender timely appealed on DiCenzi's behalf.

No. 04-3571    DiCenzi v. Rose    Page 3

## II.

### A. Standard of Review

Since the only issue on appeal is whether the district court properly calculated the timeliness of DiCenzi's habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified at 28 U.S.C. § 2244(d)), we review the district court's interpretation of the statute de novo. See, e.g., Miller v. Collins, 305 F.3d 491, 493-94 (6th Cir. 2002). The relevant AEDPA statute of limitations is as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

DiCenzi's petition raised four grounds for granting a writ of habeas corpus. Claims (1) through (3) deal with matters that occurred at sentencing, and claim (4) deals specifically with a decision of the Court of Appeals. We will consider the appeal-based claim first, and then proceed to evaluate the sentencing-based claims.

### B. Claim Based on the Ohio Court of Appeals' Denial of Delayed Appeal

DiCenzi first claims that the appellate court improperly refused to allow him to file a delayed appeal. This claim accrued when the Court of Appeals for Cuyahoga County denied DiCenzi's motion for delayed appeal, on September 25, 2001. Therefore, under 28 U.S.C. § 2244(d)(1), the AEDPA "clock" began running on September 25, 2001. See 28 U.S.C. § 2244(d)(1)(D) (initiating the one-year AEDPA requirement on the date upon which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence).¹

---

¹The Public Defender filed a motion for reconsideration in the Court of Appeals during this time, and that motion was denied on October 24, 2001. It is unclear whether motions for reconsideration filed pursuant to Ohio App. R. 26(A) toll AEDPA's statute of limitations. See Droughton v. DeWitt, No. 01-3899, 65 F. App'x. 949, 951 (6th Cir. 2003). Because we find DiCenzi's petition timely even if the period between October 5 and October 24 is not tolled, we need not decide whether motions filed pursuant to R. 26(A) toll AEDPA's statute of limitation.

---

No. 04-3571    DiCenzi v. Rose    Page 4

DiCenzi did not file a motion to appeal in the Supreme Court of Ohio until November 16, 2001, fifty-two days after the Court of Appeals denied DiCenzi's motion for delayed appeal. In DiCenzi's November 16 motion, he presented, in accordance with Ohio procedural rules, reasons why the Supreme Court of Ohio should hear his appeal despite the fact that the applicable time limit for direct appeals had ended. Such a motion for delayed appeal, even if granted, does not restart the statute of limitations, but if properly filed, it does toll the statute during the time the motion was pending. See, e.g., Searcy v. Carter, 246 F.3d 515, 519 (6th Cir. 2001) (holding that motions for delayed appeal toll the AEDPA statute of limitations under 28 U.S.C. § 2244(d)(2), but that such motions are not part of the direct appeal for the purposes of 28 U.S.C. § 2244(d)(1)). Accordingly, the AEDPA clock was stopped, with fifty-two day's elapsed, as of November 16, 2001, pending the Ohio Supreme Court's consideration of DiCenzi's motion.

On December 19, 2001, the Ohio Supreme Court granted DiCenzi's motion for leave to file the appeal, and ordered the parties to brief the jurisdictional merits of the appeal. On April 3, 2002, the Ohio Supreme Court concluded that DiCenzi's claim did not merit Ohio Supreme Court jurisdiction because no significant constitutional question was presented. However, the fact that the appeal itself was ultimately denied on its jurisdictional merits does not alter the fact that DiCenzi's AEDPA statute of limitations was tolled during the consideration of his motion, once it was accepted for filing. See Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004) (distinguishing between the denial of a motion to file a delayed appeal in the Ohio Supreme Court, a state procedural decision that would preclude tolling, and the granting of the motion to file the appeal but subsequent dismissal on the jurisdictional merits of the case, a decision on the merits that would not preclude tolling). The statute of limitations was thus tolled until the April 3, 2002 decision of the Ohio Supreme Court. Further, that court's decision not to hear DiCenzi's appeal, like all decisions of a state's highest court, could have been appealed to the United States Supreme Court. Following the April 3, 2002 decision, DiCenzi thus had an additional ninety days' worth of tolling in order to petition for certiorari, whether or not he actually did so. See, e.g., Abela v. Martin, 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc).

Accordingly, ninety days after April 3, 2002, or as of July 2, 2002, the AEDPA clock began running again. From this time, DiCenzi had one year minus fifty-two days to file his federal habeas claim, or until May 11, 2003. His habeas petition was in fact filed on April 3, 2003. Accordingly, at least as to his claim that the Ohio Court of Appeals denied him due process when it denied his motion for delayed appeal, DiCenzi's petition was timely under AEDPA, since the petition was filed before the expiration of the statute of limitations.

### C. Claims Based on Errors at Sentencing

DiCenzi's three other claims, that he was (1) denied his Sixth Amendment rights when his counsel was ineffective by not informing DiCenzi of his appeal rights; and that he was denied due process when the district court (2) sentenced DiCenzi to an illegal sentence under Ohio law, and (3) failed to inform DiCenzi of his right to appeal despite his guilty plea, all relate to events that took place at sentencing on June 30, 1999. Since there was no ninety-filed direct appeal, DiCenzi's sentence became final on July 30, 1999, see Ohio App. R. 4(A), and unless another provision of 28 U.S.C. § 2244(d)(1) applies, he had one year from this date to file a habeas petition under 28 U.S.C. § 2244(d)(1)(A). Obviously, even assuming that all of his later actions tolled the statute for certain periods of time, DiCenzi's habeas petition, filed on April 3, 2003, was not filed within one year of July 30, 1999. Accordingly, if the statute of limitations indeed began running on that date, DiCenzi's petition was not timely filed.

The main thrust of the non-equitable-tolling portion of DiCenzi's claim is that he could not have known about his right to a direct appeal of his maximum sentence until he spoke to the Public Defender in the summer of 2001, and thus that the statute of limitations on these claims should have

No. 04-3571                                                                                                          DiCenzi v. Rowe                                                                                          Page 5

started running only at that time, under 28 U.S.C. § 2244(d)(1)(D). This section of AEDPA starts the statute of limitations running on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. Despite DiCenzi's explicit argument in his petition that he could not have reasonably known about his appeal rights before he went to the Public Defender, the district court did not consider what diligence DiCenzi reasonably could have exercised, but rather simply concluded that the AEDPA clock began running on July 30, 1999, 30 days following the imposition of DiCenzi's sentence. See D. Ct. Op. at 3-4. DiCenzi argues that the statute should not have started running until August 2001 when he was informed by the Public Defender that he had the right to an appeal.

Of course, during all this time, had DiCenzi merely inquired of a court or a public defender regarding whether he had the right to an appeal, he could have found out that he did. He argues, however, that it is not reasonable to expect a defendant who pleaded guilty, when neither the court nor his attorney statutorily appeal rights from the sentence imposed, especially when neither the court nor his attorney at sentencing informed him of any such rights. In support of this argument, DiCenzi cites Granger v. Hurt, 90 Fed. Appx. 97, 99-101 (6th Cir. Jan. 23, 2004) (unpublished opinion), wherein an Ohio prisoner (Granger) had been told by his attorney that the attorney would appeal Granger's conviction. The attorney, then failed to do so, and Granger did not discover this failure until his appeal had passed. The district court held that the proper date for starting the statute of limitations was the deadline for filing a notice of appeal of his sentence, since Granger could have discovered his attorney's failure on that date. We reversed, holding that the district court's decision "ignores the realm of the prison system and imposes an unreasonable burden on prisoners seeking to appeal," and noting that § 2244(d)(1)(D) "does not require on the part of the prisoner the maximum feasible diligence, only 'due,' or reasonable, diligence." Granger, 90 Fed. Appx. at 100 (citing Wims v. United States, 225 F.3d 186, 190 n.4 (2d Cir. 2000)); see also, e.g., Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004) (evaluating a prisoner's due diligence in investigating trial errors, and noting the difficulties inherent in the prison environment); Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) (same). Finding that "the two months that Granger waited before inquiring about his appeal was, under the circumstances, not unreasonable," we held that Granger had exercised due diligence and thus that the AEDPA statute of limitations began running on the date he learned from his attorney that the appeal had not been filed. Granger, 90 Fed. Appx. at 100.

Accordingly, as noted by the Second Circuit,

The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever, so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence.

Wims, 225 F.3d at 190. In the instant case, the district court simply did not develop a record as to whether DiCenzi was duly diligent for statutory purposes. Accordingly, the record does not reflect what information DiCenzi had between July of 1999 and August of 2001. Indeed,

as an appellate court, we cannot say precisely when, in exercising due diligence, [a defendant] would have discovered his [right] to appeal. This is so because the date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [a defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [sentencing].

No. 04-3571                                                                                                          DiCenzi v. Rowe                                                                                          Page 6

Wims, 225 F.3d at 190-91 (citing Easterwood v. Champion, 213 F.3d 1321, 1323 (10th Cir. 2000) (taking into account "the realities of the prison system" in determining due diligence)). Absent such information, we can only speculate whether DiCenzi exercised due diligence.

It is worth noting that the State relies significantly on the fact that, in his motion for delayed appeal to the Ohio Court of Appeals, DiCenzi stated that he did "not recall having been advised, either by counsel or by the trial judge of his appellate rights — if in fact, defendant was so advised, he failed to comprehend the trial court's advice in the wake of his having just received maximum consecutive terms or imprisonment totaling 5½ years." DiCenzi thereafter obtained a copy of the sentencing transcript, included in the record before the Ohio Supreme Court, and the district court, in which it is clear that he was not advised of his right to appeal. [redacted] — in his traverse DiCenzi was explicit in stating [redacted] that he had not been informed of his right to appeal by either the sentencing court or his counsel at sentencing. Remand will allow the district court to determine both (a) when DiCenzi first learned of his right to appeal, and (b) when a reasonably diligent person in DiCenzi's position could be reasonably expected to learn of his appeal rights. Wims, 225 F.3d at 190-91.

Here, the petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D). See Isert v. Crone, 267 F.3d 594, 605-06 (6th Cir. 2001). In this case, it is not clear when the statute began running. The State notes the long periods of time during which DiCenzi apparently, took no action, and the fact that his habeas petition was not filed until just over four years after his sentence became final. DiCenzi highlights both the sentencing transcript, in which there is an absence of any notice of appeal rights, and his repeated pleadings noting that he was never informed of his right to appeal. The district court never reached the issue of diligence for the purposes of 28 U.S.C. § 2244(d)(1)(D), and thus did not weigh this evidence with regard to the statutory timeliness of DiCenzi's petition. As an appellate court, absent factual findings below, we cannot ourselves determine what DiCenzi knew or what a reasonable person in DiCenzi's position might reasonably be expected to do. We can, however, say that the several month period during which DiCenzi did not have some sort of motion pending that would have tolled the statute of limitations is not so clearly unreasonable [i.e. a prisoner in the position DiCenzi claims he was in] that it plainly appears from the face of appellant's petition and supporting papers that he is barred from habeas relief . . . . Accordingly, the district court's dismissal of appellant's petition cannot stand." Wims, 225 F.3d at 190-91.

We will thus remand this case to the district court, to allow it to determine when a defendant in DiCenzi's position, acting, with due diligence for AEDPA statutory purposes, would have discovered his right to an appeal. The period of time between July 30, 1999 and this date should be added to any periods of time thereafter that DiCenzi's actions would have tolled the statute of limitations. If, after subtracting this total from the time between July 30, 1999 and the filing of the petition on April 3 2003, the remaining time equals more than one year, then DiCenzi's petition was not timely filed under 28 U.S.C. § 2244(d)(1)(D). DiCenzi also requests an evidentiary hearing in order to introduce additional evidence regarding his diligence. The district court, of course, may only grant such a hearing in a habeas case if the dictates of 28 U.S.C. § 2254(e) are satisfied, a condition that is more properly addressed by the district court in the first instance.

D. Other Claims

[arrow marking]

---

[2] The district court also relied on this statement in denying DiCenzi's equitable tolling. However, because we do not reach the equitable tolling issue, see infra, we express no opinion as to how such a prior statement should affect an equitable tolling claim. Suffice it to note that the district court did not rely on this statement in limiting that, [absent] equitable tolling, DiCenzi's petition is untimely under AEDPA. Of course, on remand, the district court may consider this evidence, along with any other evidence, in determining DiCenzi's diligence for statutory purposes.

CONCLUSION

I was once told by a older and very wise gentlmen, who once owned a AAMCO Transmission Shop in Oakly, a suburb of Cincinnati and had passed the businesses on to his sons that a rule of honor and justice was very simple, and I quote What is good for the Goose is Good for The Gander, so the only fair and truthful conclusion that can be drawn from the ruling and the review of my letter to Judge Spiegel dated 7/20/04 is the same application of law that apply to Mr. DiCenzi must apply to me, the Petitioner.

Respectfully Submitted

Earl Ingels Pro Se.

---

No. 04-3571    DiCenzi v. Rose    Page 7

DiCenzi also disputes the district court's conclusion that he is not entitled to equitable tolling. However, on remand, it may be found that DiCenzi was duly diligent, for statutory purposes, for a portion of the time at issue. Such a finding could affect any equitable tolling analysis, and we therefore need not address this issue at this time. Further, though DiCenzi does not assent that he is actually innocent of the crime for which he was convicted, on appeal he does argue the merits of his claim that he is somehow "actually innocent" of the sentence imposed upon him. The district court never reached the merits of the petition, so this issue simply is not before us now.

III.

For the preceding reasons, we VACATE the district court's dismissal of DiCenzi's petition and REMAND for proceedings consistent with this opinion.

No. 04-3571                  DiCenzi v. Rose                  Page 7

DiCenzi also disputes the district court's conclusion that he is not entitled to equitable tolling. However, on remand, it may be found that DiCenzi was duly diligent, for statutory purposes, for a portion of the time at issue. Such a finding could affect any equitable tolling analysis, and we therefore need not address this issue at this time. Further, though DiCenzi does not assert that he is actually innocent of the crime for which he was convicted, on appeal he does argue the merits of his claim that he is somehow "actually innocent" of the *sentence* imposed upon him. The district court never reached the merits of the petition, so this issue simply is not before us now.

III.

For the preceding reasons, we **VACATE** the district court's dismissal of DiCenzi's petition and **REMAND** for proceedings consistent with this opinion.

## CONCLUSION

I was once told by a older and very wise gentlmen, who once owned a AAMCO Transmission Shop in Oakly, a suburb of Cincinnati and had passed the businesses on to his sons that a rule of honor and justice was very simple, and I quote What is good for the Goose is Good for The Gander, so the only fair and truthful conclusion that can be drawn from the ruling and the review of my letter to Judge Spiegel dated 7/20/04 is the same application of law that apply to Mr. DiCenzi must apply to me, the Petitioner.

Respectfully Submitted
Earl Ingels Pro Se.

AFFIDAVIT OF INDIGENCY

STATE OF OHIO )
) SS:
COUNTY OF WARREN )

I, Earl Ingels, a United States citizen and affiant herein, after being duly cautioned and sworn, depose and say:

(1) That I am currently incarcerated at the Warren Correctional Institution;

(2) That I do not have the funds or monies to pay the costs within this action;

(3) That I firmly believe that I am entitled to the relief requested;

(4) That I am not represented by an attorney of law to undertake this task for me so I must proceed in *Pro Se*;

(5) That I am indigent as defined by the Ohio Revised Code;

(6) That all of the averments and statements contained herein are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Affiant Herein

Sworn and subscribed to in my presence, a Notary Public, on this 6TH day of July, 2005.

_____
Notary Public

**David C. Combs Jr.
Notary Public
My Commission Expires:** 6/28/09

12